Hillsborough,
June 6, 1939. No. 3070.

JOHN DEITCH *v.* BOSTON & MAINE RAILROAD.

*Saidel, Lemelin, Hurley & Betley,* for the plaintiff.

*McLane, Davis & Carleton,* for the defendant.

MARBLE, J. At the time of the accident the defendant's tracks at the Westland Avenue crossing were four in number. They ran approximately north and south and were within the limits of the Manchester yard. The most easterly track, on which the accident occurred, was a passing track. The train which struck the plaintiff's automobile comprised 76 cars. It was coming into the yard from the south and was proceeding at a speed of about 15 miles an hour. Its length was about half a mile; its total weight about 2,400 tons.

A whistling post was situated at a point about 500 feet south of the crossing. From this point the tracks curved toward the east. According to the testimony of the defendant's locomotive fireman, "the crossing was right in the curve, a curve to it and a curve beyond it."

The plaintiff, a physician, was on his way to call on a patient who lived on the west side of the tracks. He drove toward the crossing from the east. The road at that point declined sharply toward the crossing. It was after nine o'clock and the road was icy. The plaintiff described the accident as follows:

"I knew that there was a railroad track and I knew that the roads were bad. I approached the railroad very slowly, and just before I attempted to cross the track I stopped and looked around and I didn't see anything and didn't hear anything, and I proceeded very slowly, and just as soon as the front wheels of my car dropped down on the first rail of the first track I also cautiously looked around to the right and to the left, and I noticed this train approaching, and then I brought the car to a full stop and tried to back up. I didn't dare to go across because of the ice and with the drop there the rear wheels couldn't pull the car out. When I noticed that, I didn't waste much time. I didn't know at what speed the train was approaching, and I opened the door and got out. . . .

"I walked back a safe enough distance and stopped and waited. The train came along and hit my car and threw it to the right of Westland Avenue, and kept on hitting it as the cars kept on coming. Every succeeding car kept hitting my car, and then the train came to a stop and the conductor got out, and I told him no one was hurt, and I proceeded on my way and that was the end of it."

Westland Avenue was described at the trial as "sort of a country road," "just a dirt road" and "a narrow road." The accuracy of this description is substantiated by certain photographs which were introduced as the plaintiff's exhibits. The road served the few families who lived on the west side of the tracks, and the public "didn't use it regularly." The Presiding Justice ruled, apparently without exception, that the crossing was a private one. Under these circumstances special crossing protection could not reasonably be required. *Wentworth* v. *Railroad*, 86 N. H. 251, 252; *Chevalier* v. *Railroad*, 89 N. H. 367, 369, and cases cited.

Furthermore, the contention that such protection, if provided, would have prevented the plaintiff from "voluntarily venturing on the tracks" is untenable. The plaintiff stated that he sat in his car "a minute or a minute and a half" and "tried several times to back off the track." There is no evidence as to the time when an automatic signaling device, properly installed, would have registered its warning.

A like answer may be given to the claim that the sounding of the

locomotive whistle would have prevented the accident. If the plaintiff consumed a minute or more in trying to back off the track, he must have been on the crossing before the engine reached the whistling post. Moreover, both the engineer and firemen, called by the plaintiff, testified definitely that the whistle was blown at the whistling post and that the automatic engine bell rang continuously. The plaintiff merely stated that he did not hear a whistle or bell before he reached the tracks.

The doctrine of the last clear chance cannot be properly invoked. The fact that the engineer saw the lights of the plaintiff's car shining on the tracks before he saw the car itself is not significant. He could fairly assume that the driver of the car had brought it to a stop and was waiting for the train to pass. The headlight of the engine, because of the curve, did not reveal the presence of the car on the track until the train was within 150 feet of the crossing. It was then too late to avoid the accident.

The engineer made what he termed to be a twenty-per-cent air-reduction stop. There is no evidence to contradict his assertion and that of the fireman that an emergency application of the brakes would not have stopped the train within 300 feet. Furthermore, it was the opinion of these witnesses that an emergency stop, in view of the length and weight of the train, would have caused a wreck.

The plaintiff's exception is overruled.

*Judgment for the defendant.*

All concurred.